**FILED**

JUL 3 1 2007 **NH**

7-31-07

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, an Illinois corporation | ) ) ) | 07CV4280 |
| | ) | JUDGE NORDBERG |
| Plaintiff, | ) | MAGISTRATE JUDGE BROWN |
| v. | ) ) | Amount Demanded: $155,234.46, plus costs, |
| LONG BEACH SURGICAL INSTITUTE, A MEDICAL CORPORATION AND DANIEL SHIN, INDIVIDUALLY | ) ) ) ) | interest and appropriate attorney fees |
| Defendants. | ) | |

## VERIFIED COMPLAINT

NOW COMES IFC CREDIT CORPORATION by and through one of its attorneys, BETH ANNE ALCANTAR of IFC CREDIT CORPORATION, and for its Complaint against the Defendants, alleges and states as follows:

### FACTS APPLICABLE TO EACH COUNT - THE PARTIES

1.    Plaintiff, IFC Credit Corporation ("IFC") was and now is a corporation incorporated under the laws of the State of Illinois, having its principal place of business at 8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053.

2.    Long Beach Surgical Institute, A Medical Corporation is a California corporation, and has its principal place of business in the State of California.  Defendant, Long Beach Surgical Institute, A Medical Corporation, executed relevant documents which are the subject of this lawsuit.

3.    Daniel Shin ("Shin") is the Personal Guarantor, and has his principal place of residence in the State of California.

## JURISDICTION AND VENUE

4.        This court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds, exclusive of interest and cost, the sum of $155,234.46 and is between citizens of different states.   Venue is proper pursuant to 28 U.S.C. §1391(a)(1). Additionally, a certain Equipment Lease Agreement, Agreement No. 22526301, and Guaranties were executed by the Defendants and are the subject matter of this suit. Those documents contain forum selection clauses designating this judicial district as the exclusive jurisdiction and venue for this action.

## COUNT I
## BREACH OF CONTRACT OF LESSEE LONG BEACH SURGICAL INSTITUTE, A MEDICAL CORPORATION

5.        IFC realleges and reincorporates, as if fully set forth herein, the allegations of Paragraphs 1 through 3 inclusive.

6.        On or about March 28, 2006, Long Beach Surgical Institute, A Medical Corporation, as lessee, entered into Equipment Lease Agreement No. 22526301 (the "Lease") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment").   A copy of the Lease bearing a description of the Equipment is attached and incorporated as **"Exhibit A."**

7.        Long Beach Surgical Institute, A Medical Corporation took delivery of and accepted the Equipment on or about March 30, 2006. (See "Acceptance of Delivery" Section of **"Exhibit A.").**

8.        The Lease obligates Long Beach Surgical Institute, A Medical Corporation to make 60 consecutive monthly payments to the lessor in the amount of $2,405.00 each, which is

2

comprised of the specified $2,2221.70 monthly lease payment plus sales tax, unless the Lease is terminated in accordance with the provisions of paragraph 15.

9.     The Lease provides at Paragraph 14 that in the event Long Beach Surgical Institute, A Medical Corporation fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under the Lease immediately due and payable (the "Accelerated Balance").

10.    Long Beach Surgical Institute, A Medical Corporation has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to the Lease.

11.    Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC, accelerated the Lease payments, which became immediately due and payable. Notices of Default and Acceleration were sent to Long Beach Surgical Institute, A Medical Corporation. True and correct copies of such Notices are attached hereto as "**Exhibit B**".

12.    IFC is entitled to recover from Long Beach Surgical Institute, A Medical Corporation an amount equal to the Accelerated Balance, plus the residual value of the Equipment, plus interest in accordance with the terms of the Lease, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under the Lease.

13.    After applying all just credits and deductions, there is presently due and owing to IFC the amount of not less than $155,234.46, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to the Lease, as well as interest thereon.

14.    The obligation of Long Beach Surgical Institute, A Medical Corporation to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the Lease, which is 1.5% per month pursuant to paragraph 12 of the Lease.

3

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Long Beach Surgical Institute, A Medical Corporation, jointly and severally with all other defendants in this action, as follows:

a)       Awarding IFC damages in the principal amount of not less than $155,234.46, together with interest thereon in accordance with the terms of the Lease, from the date of default, until such sum is paid in full;

b)       Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under the Lease; and

c)       Awarding IFC such other and further relief as this Court deems just and reasonable.

### COUNT II
### BREACH OF CONTRACT OF
### PERSONAL GUARANTY BY DANIEL SHIN

15.    As and for Paragraph 15 of its Verified Complaint, IFC restates Paragraphs 1 through 14 as if fully set forth herein.

16.    Defendant Shin unconditionally and personally guaranteed the performance of Long Beach Surgical Institute, A Medical Corporation under the Lease, in writing (the "Personal Guaranty"). A true and correct copy of the Personal Guaranty appears on the face of the Lease, which is attached as **"Exhibit A."** Said copy has been redacted to exclude the social security numbers listed thereon.

17.    IFC has demanded that Shin satisfy the indebtedness of Long Beach Surgical Institute, A Medical Corporation under the Lease, but Shin has failed and refused to do so.

18.    Shin is presently obligated to IFC for the principal amount due IFC of not less than $155,234.46, exclusive of reasonable attorneys' fees, costs and other applicable charges accruing pursuant to the Lease and the Personal Guaranty, as well as interest thereon in accordance with the terms of the Lease.

4

19.    The obligation of Shin to pay IFC is based upon a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the Lease and the Personal Guaranty, which is 1.5% per month pursuant to paragraph 12 of the Lease.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Daniel Shin, jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $155,234.46, together with interest thereon, from the date of default, until such sum is paid in full;

b)    Awarding IFC its attorneys' fees, collection and court costs incurred in enforcing its rights under the Lease; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

Respectfully submitted,

IFC CREDIT CORPORATION

By
Beth Anne Alcantar

Beth Anne Alcantar, IARDC No. 06226582
Attorney for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

5

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned, David J. Stone, Vice President of Collection of IFC Credit Corporation, certifies that the statements set forth in the foregoing instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes them to be true.

David J. Stone

Beth Anne Alcantar, IARDC No. 06226582
Attorneys for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

Long Beach Surgical Institute, a Medical Corporation

6

# FIRSTCORP®
*First in Equipment Leasing*

**IFC Credit Corporation dba FIRSTCORP**
8700 Waukegan Road, Suite 100
Morton Grove, Illinois 60053
888-554-4432

**Equipment Lease Agreement**

Page One of Lease Number: 22526301

**Lessee**

| | |
|---|---|
| NAME | Long Beach Surgical Institute, A Medical Corporation |
| ADDRESS | 701 E. 28th Street |
| CITY, STATE, ZIP | Long Beach, CA 90806 |
| COUNTY | Los Angeles |
| CONTACT | Daniel Shin (562) 216-4300 |

TAX ID NO. 954856012

**Supplier**

| | |
|---|---|
| NAME | United Leasing and Distributions, Inc. |
| ADDRESS | 10025 Ellis Ave. |
| CITY, STATE, ZIP | Fountain Valley, CA 92708 |
| CONTACT | Philip Mohseni |
| PHONE | (714) 593-5600 |

**Equipment Schedule**

Quantity      Description of Equipment Leased & Model / Serial Number:

(2) Anesthesia machines raman w/ monitor by Ohmeda model 8000 and S-5 ABSM00072 monitor by Welch Allyn
(1) Auto Clave Sterilizing Machine by Amsco model Eagle 3000 Ser#3013

Equipment Location: 701 E. 28th Street, Long Beach, CA 90806

**Schedule of Rental Payments**    PAYMENT AMOUNT(S): FIRST PAYMENT OF $4,443.40 FOLLOWED BY 58 PAYMENTS AT $2,221.70

| Initial Lease Term (in Months): | Total # of Payments: | Monthly Payment: | Advance Payments: |
|---|---|---|---|
| 60 | 60 | $2,221.70 | $4,443.40 |
| | | [ as applicable taxes ] | |

**Lease Acceptance**

THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ON THIS PAGE ONE AND ON PAGE TWO WHICH ARE MADE A PART HEREOF AND WHICH LESSEE AND LESSOR ACKNOWLEDGE THAT THEY HAVE READ AND ACCEPT. THIS IS A NONCANCELABLE / IRREVOCABLE LEASE. LESSEE'S OBLIGATIONS UNDER THIS LEASE ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO ANY SETOFF, DEFENSE, OR COUNTERCLAIM. LESSEE REPRESENTS THAT ALL ACTIONS REQUIRED TO AUTHORIZE THE EXECUTION OF THIS LEASE ON BEHALF OF LESSEE BY THE FOLLOWING SIGNATORY HAS BEEN TAKEN. THE SIGNATORY BELOW REPRESENTS THAT S/HE IS DULY AUTHORIZED TO SIGN THIS LEASE FOR THE LESSEE.

Lessor: IFC Credit Corporation dba FIRSTCORP

By: _Pamela A. Miller_

Title: Pamela A. Miller, Contract Manager

Accepted on: 04/04/06

Lessee Name: Long Beach Surgical Institute, A Medical Corporation

Signature: X

Printed Name: Daniel Shin

Title: PRESIDENT

Date: 03/28/2006

**Personal Guaranty**

For purposes of this Guaranty, Lease shall mean this page one and page two, Guarantor shall mean the person making the guaranty, Lessor shall mean the Lessor indicated above and Lessee shall mean the Lessee indicated above. In order to induce Lessor to enter into this Lease with Lessee, Guarantor absolutely, irrevocably and unconditionally guarantees to Lessor all payments and other obligations under the Lease. This is an absolute and continuing guaranty. THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND SUBJECT TO ALL TERMS OF PARAGRAPH 17 OF THE LEASE. The undersigned waives any right to require suit against Lessee before enforcing this Guaranty.

S.S. Number: _____ Guarantor Name: Daniel Shin    Signature: X

S.S. Number: _____ Guarantor Name: _____    Signature: X

**Acceptance Notice & Equipment Disclaimer**

No defect or unfitness of Equipment shall release Lessee of the obligation to pay rental payments or of any other obligations under the Lease. Lessee has received all of the items listed on the Equipment Schedule and such Equipment is in good order and condition and is acceptable to Lessee "as is, where is". The decals, labels, etc., if required and supplied have been affixed to the Equipment. Lessee approves payment by Lessor to the supplier(s) of the Equipment. Lessee hereby certifies that Lessor has fully and satisfactorily performed all covenants and conditions to be performed by Lessor under the Lease.

Lease Number: 22526301     Name: Daniel Shin     Title: PRESIDENT
Date: 3/30/06     Signature: X

**Request For Electronic Payment**

Lessee hereby authorizes and requests Lessor or its assigns to initiate electronic debit entries via automated clearing house with the financial institution named below ("Bank"), and Lessee will authorize Bank to honor the debit entries initiated by Lessor. Lessee will ensure that their banking account (subject to payment of debit) will have sufficient monies within the account to cover the payment debit entries under this Lease. This authority pertains to this Lease and any related ancillary Lease documentation.

Lessee Name: Long Beach Surgical Institute, A Medical Corporation     Lease Number: 22526301     Bank Name: _____
Bank Address (City & State): _____     Bank Telephone Number: _____
Account Number: _____     Date: 03/28/2006     Signature: X

*Please attach an original voided check from the account to be drawn upon.*

IFC env0713D4

PLAINTIFF'S EXHIBIT A

1. Lease Terms and Conditions; Equipment: The terms of this Lease begin on the date Lessee accepts the Equipment and shall continue for the Initial Lease Term and any Renewal Term hereof. Lessee agrees to lease from Lessor, the Equipment or Software License identified on page one or, if separately scheduled, in the exhibit annexed hereto and made a part hereof ("Equipment").

2. Rentals; The obligation to make payments begins when the Equipment is delivered to Lessee. The due dates will be set by Lessor. Lessee agrees to pay Lessor all the Rental Payments and any per day Rental Payments to be invoiced and calculated from the date of acceptance to the first payment due date. All Rental Payments shall be received by Lessor or its assignee on or prior to the monthly due date at an address designated by Lessor. IF THE ACTUAL TOTAL COST OF THE EQUIPMENT VARIES FROM THE SUPPLIER'S ESTIMATE, LESSEE AUTHORIZES LESSOR TO ADJUST THE LEASE PAYMENTS BY UP TO 20%. Time is of the essence to this Lease and Lessee's obligation to make all payments hereunder are absolute and unconditional. Any amount received by Lessor at or prior to the date of this Lease shall, at Lessor's sole option, be non-refundable or held as security for the performance of the terms of this Lease.

3. Warranties: LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE IN CONNECTION WITH THIS LEASE. Lessor transfers to Lessee any manufacturer or supplier warranties to exercise at Lessee's own expense. Lessee agrees to continue making payments to Lessor under this Lease regardless of any claims Lessee may have against the supplier(s) or manufacturer(s). Lessee acknowledges that no equipment supplier or supplier agent is authorized to change any term, provision or condition of this Lease. Lessee and any Guarantor expressly represent and warrant to Lessor that Lessee has: a) reviewed and approved the purchase order or supply contract covering the Equipment for lease to Lessee; b) freely chosen to lease from Lessor and not to buy only after having considered other means of obtaining the Equipment; and c) provided financial information and other statements to Lessor which are accurate and correct and which will be updated upon Lessor's request during the term of this Lease.

4. UCC-Article 2A Provisions: Lessee agrees that this lease is a "Finance Lease" under Article 2A-508 through 2A-522 of the UCC and not a "Secured Transaction". Lessee acknowledges that: (a) Lessor did not select, manufacture or supply the Equipment; and (b) Lessor has given Lessee the name of the supplier of the Equipment. TO THE EXTENT PERMITTED BY LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES GRANTED TO A LESSEE UNDER ARTICLE 2A OF THE UCC. The supplier is set forth in this Lease or on the attached schedule. If, notwithstanding the intention of the parties, this Lease is deemed to be a loan then the rent hereunder shall be reduced so that any interest portion is the highest rate permitted by applicable law.

5. Use of Equipment; Taxes: Lessee is solely responsible for installing, using, operating and maintaining the Equipment and shall do so in accordance with all applicable laws. Lessee agrees: to pay when due either directly or as reimbursement to Lessor, all licensing and registration fees, taxes (i.e. sales, use and personal property) and charges applicable to the Equipment; to keep the same free of levies, liens and encumbrances and; TO SHOW THE EQUIPMENT AS LEASED EQUIPMENT ON LESSEE'S PERSONAL PROPERTY TAX RETURNS. Lessor may pay such taxes and other charges and may file tax returns on behalf of Lessee if Lessee fails to do so and Lessee agrees to immediately reimburse Lessor for its reasonable costs. Lessee agrees that Lessor is entitled to all tax benefits resulting from ownership of the Equipment. Lessee agrees that should any of such tax benefits be disallowed, Lessee shall indemnify Lessor for such loss by paying Lessor an amount equal to the value of the lost benefits.

6. Security Deposit: At Lessor's option, any security deposit made hereunder may be applied by Lessor to satisfy any amount owed to Lessor hereunder, in which event Lessee shall promptly restore the security deposit to its full amount. The security deposit may be refunded to Lessee provided all the terms and conditions of this Lease have been satisfied.

7. Equipment Ownership and Title; Location: Lessor is the owner of the Equipment and Lessee shall have no right, title or interest in the Equipment except as expressly set forth in this Lease. Lessee will not pledge the Equipment and will keep the Equipment free and clear of all liens and encumbrances. Lessor may inspect the Equipment and has the right to direct Lessee to affix labels that give notice of Lessor's ownership. Lessor agrees that it does not take title in any Software. Lessee grants Lessor a security interest in any Software License. The Equipment shall remain Lessor's sole personal property whether or not affixed to realty. All additions, attachments, accessories or repairs made to the Equipment become a part thereof and Lessor's property. Lessee authorizes Lessor to file a copy of this Lease as a financing statement and appoints Lessor as Lessee's attorney-in-fact to execute and file any such financing statements on Lessee's behalf. Lessee further agrees that in the event this Lease is deemed to be a "Secured Transaction" by a court of competent jurisdiction, then the Lease shall serve as a security agreement that is covered by the above noted financing statement. Lessee agrees to pay to Lessor an administrative fee for documentation costs and to reimburse Lessor for the expense of preparing and filing such financing statements. Lessee further agrees to pay other fees associated with administrative requests made by Lessee, as well as fees associated with modifications and termination of the Lease and performing an equipment inspection. The Equipment will not be moved from the above Equipment Location without Lessor's prior written consent.

8. Equipment Return: AT LEASE TERMINATION, LESSOR SHALL RECEIVE ALL EQUIPMENT IN THE SAME CONDITION AS ORIGINALLY RECEIVED BY LESSEE LESS NORMAL WEAR AND TEAR, AT LESSEE'S COST IN A TIME, MANNER AND TO A LOCATION DESIGNATED BY LESSOR. Lessee agrees to pay Lessor a re-stocking fee of 5% of the original Equipment cost and if required by Lessor, Lessee will provide Lessor with a de-installation certificate, in a form and substance satisfactory to Lessor. These obligations shall survive the termination of this Lease. If the Equipment is not returned as provided herein, Lessee agrees to pay Lessor monthly Rental Payments at the above stated rate for any month or part thereof until the Equipment is received by Lessor or Lessor's designee. Lessee shall pay to Lessor all amounts necessary to bring the Equipment to retail resalable condition, full working order, and in complete repair. Lessee shall be solely responsible for all damage and other costs relating to the removal of the Equipment from the premises.

9. Assignment: LESSEE HAS NO RIGHT TO SELL, TRANSFER, ASSIGN OR SUBLEASE THE EQUIPMENT OR THIS LEASE. Lessor may sell, assign, or transfer this Lease and all Equipment. The assignee or new owner will have all of Lessor's rights but none of its obligations under this Lease. Lessee will not assert against any assignee or new owner any claims, defenses, or setoffs that Lessee may have against Lessor.

10. Insurance; Risk of Loss: Lessee bears the entire risk of loss or destruction of the Equipment. Lessee agrees to provide and maintain property insurance against loss, theft, damage and destruction of the Equipment until all obligations incurred by Lessee under this Lease are paid in full and to name Lessor as loss payee on such insurance. Lessee also agrees to obtain general public liability insurance from an insurance company acceptable to Lessor and name Lessor as additional insured. If Lessee fails to maintain such insurance, or fails to provide proof of insurance, Lessor may, but is not obligated to, obtain such insurance in such forms and amounts necessary to protect its interests. Lessee agrees to

pay Lessor a monthly insurance charge, which shall include all related premiums, interest, fees, charges, and a profit to Lessor and its agents for providing such coverage. Lessee is responsible for all risks of loss or damage to the Equipment and if any loss occurs Lessee is required to satisfy all Lease obligations. Lessee agrees to arbitrate any dispute regarding such insurance charges under the rules of the American Arbitration Association in Chicago, Illinois.

11. Indemnity: Lessee hereby agrees to indemnify and hold Lessor harmless against all losses or injuries caused by the Equipment and will reimburse Lessor and defend Lessor against any such claims. Should Lessee be entitled under applicable law to revoke its acceptance of the Equipment, Lessee agrees to reimburse and indemnify Lessor for any payment by Lessor to the Supplier of the Equipment.

12. Late Charges and Collection Charges: If any part of a Rental Payment is late, Lessee agrees to pay a late charge of 15% of the Rental Payment amount and an interest charge of 1.5% of the amount outstanding per month for every month after the first month which the sum remains unpaid or the maximum amount allowed by law, whichever is less, and for sums unpaid for more than 15 days, a collection call charge to reimburse Lessor for its time and expense in making any collection call and not as a penalty. Such collection call charge is stipulated and liquidated to be $20.00 per call and shall not exceed $40.00 per month.

13. Default: If Lessee fails to make any Rental Payment when due or fails to observe any other of its obligations under this Lease or any other lease between Lessor and Lessee, then Lessee will be in default.

14. Remedies: If Lessee is in default under this Lease, then Lessor at its sole election, shall have the right to exercise any or all of the following with or without notice: 1) at Lessee's expense either require Lessee to return the Equipment or Lessor or its agent can immediately repossess the Equipment without court order or other process of law; and/or 2) sell the Equipment at public or private sale and credit Lessee for the net proceeds thereof (after deducting all costs related to the sale or disposition of the Equipment); and/or 3) accelerate all sums due or to become due, including the residual value of the Equipment and Lessee agrees that the Equipment residual value for all purposes under this Lease shall be at Lessor's sole election, a) the then fair market value of the Equipment, or b) liquidated at 25% of the original cost of the Equipment to Lessor, with all amounts due hereunder payable forthwith upon Lessor's demand; and/or 4) as liquidated damages for breach of this Lease and not as a penalty, institute appropriate legal proceedings against Lessee and any Guarantor for accelerated sums, payments and charges due and payable but not specifically calculable hereunder; and/or 5) rescind any purchase option previously granted to Lessee; and/or 6) any remedy available to Lessor under the Uniform Commercial Code or law or equity; and/or 7) require Lessee to pay for Lessor's costs of collection and costs of enforcing its rights under this Lease, including but not limited to, reasonable attorneys' fees and court costs. All accelerated Rental Payments or other payments chargeable under this Lease shall be payable in full not subject to reduction on a present value or other basis. Lessor's rights and remedies hereunder shall be cumulative and action upon one shall not be deemed to constitute an election of remedies or waiver of any other right or remedy to which Lessor is entitled. In the case where software is part of the Equipment, Lessor may instruct the licensor to terminate the Software License and any support and maintenance agreement(s). Lessee agrees that Lessor shall not be responsible to Lessee for any consequential or incidental damages for any default by Lessor under this Lease.

15. Renewal Term: UNLESS LESSEE GIVES WRITTEN NOTICE OF TERMINATION TO LESSOR AT LEAST 90 DAYS, BUT NOT MORE THAN 120 DAYS PRIOR TO THE SCHEDULED TERMINATION OF THIS LEASE, THIS LEASE SHALL AUTOMATICALLY RENEW ON ALL OF THE TERMS AND CONDITIONS SET FORTH HEREIN FOR A ONE YEAR PERIOD WITHOUT THE NECESSITY OF THE EXECUTION OF ANY FURTHER DOCUMENTATION AND SHALL THEREAFTER CONTINUE FROM YEAR TO YEAR UNDER THE SAME TERMS AND CONDITIONS UNLESS AND UNTIL TERMINATED BY WRITTEN NOTICE TO LESSOR AT LEAST 90 DAYS, BUT NOT MORE THAN 120 DAYS, PRIOR TO THE END OF ANY SUCH YEAR. IN THE EVENT OF SUCH A RENEWAL THE SECURITY DEPOSIT AS SET FORTH HEREIN MAY BE APPLIED TOWARD THE RENEWAL PERIOD AT LESSOR'S DISCRETION.

16. Applicable Law; Jurisdiction and Venue: THIS LEASE AND THE GUARANTY IS PERFORMABLE IN THE STATE OF ILLINOIS AND SHALL BE GOVERNED BY AND SUBJECT TO THE INTERNAL LAWS (AS OPPOSED TO CONFLICTS OF LAW PROVISIONS) AND DECISIONS OF THE STATE OF ILLINOIS. LESSOR, LESSEE AND GUARANTOR AGREE THAT ANY ACTION ARISING UNDER OR IN CONNECTION WITH THIS LEASE OR GUARANTY MUST AT LESSOR'S OR ITS ASSIGNEE'S ELECTION BE COMMENCED ONLY IN A LOCAL, STATE, OR FEDERAL COURT LOCATED IN COOK COUNTY, ILLINOIS OR ANY OTHER COURT SELECTED BY LESSOR'S ASSIGNEE WHERE ASSIGNEE MAINTAINS ITS PRINCIPAL PLACE OF BUSINESS. LESSEE AND GUARANTOR HEREBY IRREVOCABLY CONSENT TO THE JURISDICTION AND VENUE OF ANY SUCH COURT AND WAIVE ANY OBJECTION RELATING TO IMPROPER VENUE OR FORUM NON CONVENIENS TO THE CONDUCT AND PROCEEDING IN ANY SUCH COURT. LESSEE, ANY GUARANTOR, AND LESSOR EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY.

17. Arbitration: At Lessor's sole election, Lessor may submit any matter arising out of or relating to this Lease, including any claim, counterclaim, setoff, or defense, to binding arbitration by The American Arbitration Association at any site of Lessor's choice. The decision and award of the arbitrator(s) shall be final and binding and may be entered as rendered in any court having jurisdiction thereof.

18. Notice; Consent to Service of Process: ANY INVOICE, NOTICE OR SERVICE OF PROCESS REQUIRED BY THIS LEASE, OR BY LAW WITH RESPECT TO THIS LEASE IS VALIDLY GIVEN WHEN MAILED POSTAGE PRE-PAID BY FIRST-CLASS MAIL OR BY A NATIONALLY RECOGNIZED OVERNIGHT COURIER TO LESSEE ANDOR GUARANTOR AT THE ABOVE-IDENTIFIED ADDRESS OR ANY ADDRESS HEREAFTER SUBMITTED TO LESSOR IN WRITING.

19. Miscellaneous: Lessee agrees page one and this page two contain the entire agreement between the parties and any modification must be in writing and signed by all of the parties hereto. Lessee agrees that the Equipment is being leased for business purposes only and will not be used for personal, family, or household purposes. The provisions of this Lease are severable and therefore, if any provision of this Lease is held invalid or unenforceable, the remainder of this Lease will not be affected thereby. Lessee agrees that facsimile copies of any documents received and verified by Lessor may be deemed as an original, and that the original or such facsimile copy of this Lease may be microfilmed or electronically duplicated, and a photo static copy of such microfilm or electronic duplication will be admissible as evidence of this Lease and Guaranty. The parties hereto expressly waive the best-evidence rule. Lessee acknowledges receipt of a copy of this Lease. Lessee agrees that this Lease will be binding upon Lessee's heirs, successors, or legal representatives. Lessee agrees that Lessor's waiver of any provision hereunder shall not constitute a waiver of any other matter.

Page Two of Lease # 22526301                    Initials: X

**IFC Credit Corporation dba FIRSTCORP**
8700 WAUKEGAN ROAD, SUITE 100
MORTON GROVE, IL 60053
(888) 554-4432 - (847) 663-6700 - (847) 663-6702 Fax

Lease Number: 22526301

Current Date: 03/28/2006

# PURCHASE OPTION

RE: Equipment Lease Agreement No. 22526301 dated March 28, 2006 , (the "Lease") between IFC Credit Corporation dba FIRSTCORP as Lessor ("Lessor") and Long Beach Surgical Institute, A Medical Corporation as Lessee ("Lessee")

**AGREEMENT**, dated March 28, 2006 between Long Beach Surgical Institute, A Medical Corporation , party of the first part ("Lessee"), and IFC Credit Corporation dba FIRSTCORP, party of the second part ("Lessor"):

1. Subject to the Lessee having made to the Lessor or its assignee all lease rental payments on or before the rental due date, the Lessee shall have the option to purchase all, but not less than all, of the equipment described in the Lease at the end of the Initial Term of the Lease for one hundred and one U.S. Dollars ($101.00). If the Lessee fails to make all such payments when due, this purchase option is void.

2. This option may be exercised by Lessee by delivery of a signed written notice via postpaid mail to Lessor not less than ninety (90) days nor more than one hundred twenty (120) days prior to the expiration of the Lease, and such notice must be accompanied by the purchase option price. After receipt of such payment, Lessor will transfer title to the equipment to Lessee "as is, where is," and without warranty, express or implied.

3. Lessee hereby acknowledges and confirms that it has read and agrees to the terms described herein. Lessee understands and agrees that title to the equipment and all parts and accessories at any time added to such equipment shall remain in the name of the Lessor until the terms and conditions of the purchase option have been fully met.

4. No change or modification of this Agreement is valid unless agreed to in writing by both parties and endorsed hereon. This option shall not be effective until accepted in writing by a duly authorized representative of the Lessor.

WITNESS the due execution hereof and agreement hereto this March 28, 2006.

| LESSOR: | IFC Credit Corporation dba FIRSTCORP | LESSEE: | Long Beach Surgical Institute, A Medical Corporation |
|---------|--------------------------------------|---------|------------------------------------------------------|
| By: | Pamela A. Miller | By: | Devar Shin |
| Title: | Contract Manager | Title: | PRESIDENT |
| Date: | March 28, 2006 | Date: | March 28, 2006 |



CREDIT CORPORATION

## NOTICE OF DEFAULT AND ACCELERATION
### January 31, 2007
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Daniel Shin
2889 Plaza Del Amo Unit 107
Torrance, CA 90503

**RE:  FirstCorp Lease #22526301**

**Dear:  Sir or Madam**

**Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to** accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance **pursuant to the terms and conditions set forth under said Agreement.**

**Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date.  As a result of such events of default:**

1.  We HEREBY **declare the entire amount under the Agreement immediately due and payable.**

2.  We HEREBY MAKE DEMAND **upon you and any Guarantor(s), each of them, for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $155,234.46.**

3.  NOTICE **is given to you and any Guarantor(s) that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:**




MEMBER
ELA
Equipment
Leasing
Association
of America

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702



# IFC
## CREDIT CORPORATION

Page two
Lease No. 22526301

| | |
|---|---|
| Rent due as of today's date (includes all applicable taxes) Oldest Date Rent Due 10/20/06 | =$ 9,620.00 |
| Late Charges Due | =$ 1,333.04 |
| NSF Fees | =$ 35.00 |
| Number of Future rentals 49 Amount of each Rental $2,404.00 | =$117,845.00 |
| Residual | =$ 24,907.00 |
| Sales tax on residual | =$ 1,494.42 |
| BALANCE DUE IFC Credit (Subject to final Audit upon Payment) | =$155,234.46 |

If receipt of certified funds in the amount of $155,234.46, and return of the subject equipment, has not occurred by 5 p.m. on February 10 , 2007 , Lessee and any Guarantor(s) are advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith. Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement. Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

IFC Credit Corporation DBA FirstCorp Leasing

encl.
cc: **Regular Mail**





MEMBER

ELA
Equipment
Leasing
Association
of America

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 6005.



CREDIT CORPORATION

## NOTICE OF DEFAULT AND ACCELERATION
### January 31, 2007
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Long Beach Surgical Institute
701 E. 28th Street #300
Long Beach, CA 90806

RE: **FirstCorp Lease #22526301**

**Dear: Sir or Madam**

**Notwithstanding IFC Credit Corporation's efforts to resolve the delinquent status of your account, we now find no alternative but to** accelerate the subject Lease Agreement, a copy of which is enclosed, and make demand upon you for full performance **pursuant to the terms and conditions set forth under said Agreement.**

**Be hereby advised that events of default, in accordance with the terms of the subject Agreement, have occurred, and continue as of this date. As a result of such events of default:**

1. We HEREBY **declare the entire amount under the Agreement immediately due and payable.**

2. We HEREBY MAKE DEMAND **upon you and any Guarantor(s), each of them, for immediate payment of all amounts due under said Agreement, as set forth below, in the amount of $155,234.46.**

3. NOTICE is given to you and any Guarantor(s) that we intend to assert all available rights and remedies under the Agreement, including and without limitation the right to recover attorney's fees and costs incurred in connection with Lessee's default; the right to recover from Lessee all reasonable expenses incurred in retaking, holding and preparing the equipment for sale of other disposition; and the right to recover all amounts due and owing to us:





8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702



**CREDIT CORPORATION**

Page two
Lease No. 22526301

| | |
|---|---|
| Rent due as of today's date (includes all applicable taxes) Oldest Date Rent Due 10/20/06 | =$ 9,620.00 |
| Late Charges Due | =$ 1,333.04 |
| NSF Fees | =$     35.00 |
| Number of Future rentals 49 Amount of each Rental $2,404.00 | =$117,845.00 |
| Residual | =$ 24,907.00 |
| Sales tax on residual | =$  1,494.42 |
| BALANCE DUE IFC Credit (Subject to final Audit upon Payment) | =$155,234.46 |

If receipt of certified funds in the amount of $155,234.46, and return of the subject equipment, has not occurred by 5 p.m. on February 10 , 2007 , **Lessee and any Guarantor(s) are advised that we will have no alternative but to immediately enforce our legal rights and remedies under said Agreement to enforce compliance therewith.** Receipt of any monies less than the entire amount demanded herein will not alter our rights or intention under the terms of the subject Agreement. Any such sums received will be deposited and applied against the sums due, but no such act shall cure any default declared herein or affect acceleration of all sums due as set forth herein.

Sincerely,

**IFC Credit Corporation DBA FirstCorp Leasing**

encl.
cc:    Regular Mail





MEMBER

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700 • Fax: (847) 663-6702